OPINION OF THE COURT
Donald J. Corbett, Jr., J.
This is a motion seeking permission to file a late claim pursuant to Court of Claims Act § 10 (6). The facts are hardly in dispute.
Claimants (hereinafter Hilton Pharmacy for ease of refer *698 ence) operated the Hilton Pharmacy and had been selling New York State Lottery tickets since 1989, pursuant to an "OnLine Agent Agreement/License” dated September 11, 1989, with the New York State Division of the Lottery (Lottery). On March 30, 1994, after becoming aware that claimants Sonnedecker and Loorie had been arrested on certain criminal charges, the Lottery temporarily suspended the Hilton Pharmacy’s license to sell Lottery tickets.
The grounds enumerated for the temporary suspension were the felony arrests noted above, and were based upon a "finding that an immediate suspension [was] necessary for the preservation of the general welfare.” Claimants were entitled to a hearing within 20 days of the temporary suspension, and although the hearing was held on August 31, 1994, well beyond the 20-day period, the delays apparently were all due to requests for adjournments made by claimants. The lateness of the hearing does not form any part of the allegations of breach of contract herein. On September 8, 1994, the Hearing Officer rendered an advisory opinion, recommending that the suspension be lifted.
On September 28, 1994, the Director of the Lottery rejected that recommendation, finding that the record was clearly incomplete, and, in pertinent part, appointed a substitute Hearing Officer, directed that further proceedings be held, and directed that the temporary suspension be continued pending the outcome of the criminal proceedings. He also found that a purported failure by claimants to pay the Lottery certain sums due, an alleged default which preceded the arrest and temporary suspension, was sufficient to warrant the suspension of the license and the continuation thereof. Specifically, he directed that the license remain suspended pending the outcome of the criminal charges, unless further proceedings on the issue of earlier alleged default in payment warranted revocation on that issue alone. Upon submission of the instant motion, the remanded hearing had not been held, and the court was not advised of any rescheduled date.
In an application seeking permission to file a late claim, the court examines the six statutory factors enumerated in section 10 (6). With respect to notice of the essential facts underlying the claim, the opportunity to investigate and the question of prejudice, no issue has been raised. With respect to the question of timeliness, interesting questions were raised at the argument herein. When did the cause of action accrue? When did the purported breach(es) of contract occur? When did *699 damages become ascertainable? These questions are pertinent because it was argued that perhaps this motion is premature, in that the Director had not yet issued a final ruling, and thus no actionable breach had yet occurred, and damages could not be ascertained with reasonable certainty until a final order by the Director was issued. If the claim had not yet accrued, then there would be no merit to the proposed claim, and thus no issue of an excuse for failure to timely file.
It was clear that claimants were merely intending to preserve their rights in this court. Indeed the defendant has argued that an alternative remedy, in the form of a CPLR article 78 proceeding, was available. Claimants argue that if they obtain injunctive relief in an article 78 proceeding, to wit, the restoration of their license, they would not be able to obtain monetary damages for the period preceding such hoped for result. While the claimants seek prophylactic relief, there is a sound argument that their claim for damages could not accrue until such time as they obtain equitable relief in Supreme Court.
Claimants allege violation of a statute and breach of contract, although they do not specify precisely which terms and conditions of the "On-Line Agent Agreement/License” are supposed to have been breached, other than broadly alleging that the breach occurred when the temporary suspension was imposed. Specifically the proposed claim asserts that the Lottery wrongfully suspended claimants’ license and terminated their on-line terminal access to the Lottery on or about March 30, 1994. Alternatively, claimants allege that the claim accrued on or about September 28, 1994 when the Lottery Director rendered his opinion and order, inter alla, rejecting the recommendation of the Hearing Officer and continuing the temporary suspension.
I find that the proposed claim does not articulate any cause of action relating to the actions of the Lottery Director on or about September 28, 1994. Even the broadest reading of the proposed claim on claimants’ behalf reveals that no wrongful act by the Director is alleged, that no cause of action is stated (CPLR 3211 [a] [7]) and therefore there is no reasonable cause to believe that a valid cause of action exists based upon the Director’s actions of September 28, 1994 (Matter of Santana v New York State Thruway Auth., 92 Misc 2d 1, 11).
The other specific allegation of the proposed claim alleges that the Lottery wrongfully suspended the claimants’ license, *700 violating Tax Law § 1607 and the licensing agreement. Tax Law § 1607 recites that "Such license may, however, be temporarily suspended by the division without prior notice, pending any prosecution, investigation or hearing” (emphasis supplied) if there is "Fraud, deceit, misrepresentation or conduct prejudicial to public confidence in the state lottery” (Tax Law § 1607 [d]). The defendant alleges that the arrest of claimants Sonnedecker and Loorie on charges of grand larceny in the second degree (Penal Law § 155.40 — a C felony) forms a sufficient predicate for temporary suspension due to fraud and conduct prejudicial to the public confidence in the Lottery. The statute (Tax Law § 1607 [d]) reserves the right of the Lottery to take such action, and other than the fallacious argument regarding the form of the notice, discussed below, no breach of the Licensing Agreement or the law is alleged.
I am not swayed by claimants’ arguments that the temporary suspension was improperly imposed by (1) the Director of Operations for the Lottery without reciting in haec verba that he was the designee of the Director of the Lottery, and (2) a letter rather than an order. Interestingly, claimants were represented by counsel at the hearing that resulted in the Hearing Officer’s advisory opinion and recommendations, upon which claimants place so much reliance. A review of that opinion reveals no discussion of the alleged improper imposition of the suspension. It is fair to presume that the issue was not raised at that proceeding. The temporary suspension was imposed in correspondence written on stationery of the Director of the Lottery. Leaving aside the question of whether this was raised at the hearing and ignored, or whether the issue was waived, claimants have not provided to the court any regulation requiring the Director’s designee to recite the designation, nor has any regulation been shown to the court which circumscribes the form of the order of suspension. It appears that claimants object to the order advising of the suspension being in the form of a letter. Absent a regulation to the contrary, if it looks like an order, smells like an order and acts like an order, is it not an order?
All of the discussion above is academic, however. An issue raised at the argument of this motion addressed the question of sovereign immunity. The State has not waived immunity and "is not liable for any act which is completely sovereign in nature and completely foreign to any activity which could be carried on by a private person” (Williams v State of New York, 90 AD2d 861, 862). Here, the activity involved, the *701 operation of the Lottery, is fully governmental and not proprietary in nature. To the extent that the official actions forming the basis of the alleged liability here are the discretionary acts of Lottery officials in temporarily suspending claimants’ license and in continuing the suspension, the State is immune from liability (see, Tango v Tulevech, 61 NY2d 34).
Accordingly, the proposed claim does not have merit and it would be an exercise in futility to allow its filing. The motion is denied.